# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 23-cr-50 (JMC)** |
| | : | |
| **DILLON PAUL HOMOL** | : | |
| | : | |
| **Defendant.** | : | |

## UNITED STATES' OPPOSITION TO
## THE DEFENDANT'S MOTIONS TO DISMISS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's Motion to Dismiss the Indictment. ECF No. 66.  In his motion, the defendant seeks to dismiss counts in the Indictment on either failure to state elements or multiplicity grounds. But all of Homol's arguments for dismissal lack merit, and his motion should be denied.

## FACTUAL BACKGROUND

Homol's role in the January 6, 2021, attack on the U.S. Capitol is described in the statement of facts supporting the criminal complaint.   (ECF No. 1).   On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol at approximately 1:00 p.m. to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. Temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were attempting to keep the crowd that had gathered outside away from the Capitol building and the proceedings underway inside.

Shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in

the crowd encouraged and assisted those acts. Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

On or about December 30, 2020, Homol was invited to and joined a Facebook group chat titled "DC Rally" with multiple other participants who planned to protest at the U.S. Capitol on January 6, 2021. Participants planned to meet on the morning of January 6 at the Botanic Garden, in the immediate vicinity of the U.S. Capitol building. Participants circulated a "security SOP" [i.e., standard operating procedure] in the event "things go sideways," and discussed bringing military-style equipment including smoke grenades, "gloves with hard/rigid knuckles," helmets, respirators, handheld radios, and first aid equipment. Participants also shared Facebook posts, including one post that stated, "Congress cannot certify this fraudulent Electoral College." On January 3, 2021, one of the other participants in the above-referenced "DC Rally" Facebook group chat sent a text message directly to Homol, stating that a "schedule 40 pvc" pipe "[c]an be used as a weapon." Homol responded, "May just have to hit a ace hardware on the way to dc for the pvc cheaper idea."

On January 5, 2021, Homol traveled from West Virginia, where he was on a snowboarding vacation, to North Carolina,[1] where he met up with another individual so they could travel to Washington, D.C. together. That evening, Homol circulated a message to the "DC Rally" Facebook group chat stating, "The Americans are coming together under the greatest presidents

---

[1] Homol lives in Cocoa Beach, Florida.

request!"

The following morning, January 6, 2021, Homol attended the "Stop the Steal" rally, standing near the Washington Monument. He then walked toward the U.S. Capitol building alongside other rioters. Homol was carrying a long white section of PVC pipe serving as an improvised flagpole with a large red MAGA flag attached. Homol was also wearing a protective vest under his clothing.



While en route to the Capitol building, Homol livestreamed himself via Facebook Live. He broadcast statements including:

    a.    "It's the Capitol building, they are counting the electorals in there right now and we stormed it. Look at them Trump flags up top."

    b.    "They can't stop us all, come on we are going into the Capitol, can't stop us all."

    c.    "American people are sick and tired of it, we're tired of it, the communist cops of Washington DC, we're storming the Capitol building. We're storming the Capitol, this is our country."

In addition, Homol broadcast via Facebook Live from the plaza outside the west side of the Capitol building. In the video clip, Homol was among a crowd of rioters facing a group of

Metropolitan Police Department ("MPD") officers guarding the Capitol. Homol chanted, "USA, USA," along with other rioters.

At approximately 2:28 p.m., Homol rushed past the line of MPD officers on the plaza outside the west side of the Capitol. Several officers were physically struggling with rioters and visibly attempting to hold back the crowd. Homol waved his PVC pipe "flagpole" and MAGA flag above his head as he rushed past the MPD officers.

At approximately 2:44 p.m., Homol entered the Capitol building through the Upper West Terrace Doors.   Homol continued to broadcast via Facebook Live from inside the Capitol. In one video clip, Homol was among a crowd of rioters, facing a line of police officers wearing riot gear with helmets and lowered face shields, who are blocking off one corridor. Homol's voice is heard stating, "Come on people."

Homol then moved into the Rotunda of the Capitol. At approximately 3:13 p.m., MPD and U.S. Capitol Police ("USCP") officers were attempting to clear the Rotunda. Homol was seated on a bench along the Rotunda wall and refused to leave. An officer grasped the straps of   Homol's backpack to physically lift him off the bench and push him toward the exit. Another officer attempted to take away Homol's PVC pipe "flagpole." Homol refused to let go and engaged in a brief tug-of-war with the officer before having the PVC pipe pulled out of his hands.

At approximately 3:36 p.m., officers pushed Homol out the east Rotunda doors; he was among the last of the rioters to exit out of that location. Homol remained just outside as officers blocked the way with a riot shield. At approximately 3:42 p.m., Homol was standing among a group of rioters who attempted to push their way back inside the east Rotunda doors, and officers sprayed the rioters, including Homol, with chemical irritant spray.

In the evening of January 6, 2021, Homol texted to an associate: "Doing great bro it was absolutely legendary. I was stunned but not hurt / Dude so insane I was gassed like a dozen times, peppers sprayed / Shot with them rubber bullets / I had a vest on tho." In addition, later that Homol received a text message that read, "Make politicians fear We The People again." On January 8, 2021, Homol responded, "I heard in the crowd. This was a warning next time it won't be so nice."

## PROCEDURAL HISTORY

Based on his actions on January 6, 2021, Homol was charged by criminal complaint on March 4, 2021, and, on March 16, 2021, Homol was arrested in Florida. On February 15, 2023, a grand jury returned a five-count indictment charging Homol with one count of obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2 (Count One); one count of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); one count of disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); one count of disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Four); and one count of parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Five). ECF No. 60. On February 23, 2023, Homol was arraigned on the indictment, and a bench trial is currently set to begin on September 25, 2023.

On April 7, 2023, the D.C. Circuit issued its opinion in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023). In *Fischer*, the D.C. Circuit reversed orders dismissing the § 1512(c)(2) charges in several cases arising from the events of January 6. Homol filed his motion to dismiss on June 2, 2023.

**LEGAL STANDARD**

An indictment's "main purpose is 'to inform the defendant of the nature of the accusation against him.'" *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001) (quoting *Russell v. United States*, 369 U.S. 749, 767 (1962)). Thus, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Given these limited requirements, it is "generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Id.* (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)).

**ARGUMENT**

**I.       The Indictment Properly Charges a Violation of 18 U.S.C. § 1512(c)(2).**

As the government has long maintained and was held in *Fischer*, § 1512(c)(2) "encompasses all forms of obstructive conduct, including . . . efforts to stop Congress from certifying the results of the 2020 presidential election." *Id.* at 335.

The grand jury charged Homol in Count One with violating § 1512(c)(2), which makes it a crime to "corruptly . . . obstruct[ ], influence[ ], or impede[ ] any official proceeding, or attempt[ ] to do so[.]" The term "official proceeding" means, among other things, "a proceeding before the Congress[.]" 18 U.S.C. § 1515(a)(1)(B). Tracking this statutory language, the Indictment alleged:

> On or about January 6, 2021, within the District of Columbia and elsewhere, **DILLON PAUL HOMOL** attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College Vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15–18.

6

ECF No. 60 at 1–2. This charge properly (1) contained the elements of the offense, (2) fairly informed Homol of the charge against which he was required to defend, and (3) provided sufficient information to protect him from future prosecutions for the same offense. Nothing more was required. *See, e.g., United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) ("[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.' . . . Rather, to be sufficient, an indictment need only inform defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense.") (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)).

Nevertheless, Homol argues that Count One is defective for three reasons. First, Homol claims that Count One does not properly allege that he acted "corruptly" under § 1512(c)(2). ECF No. 66-1 at 3. Second, Homol asserts that the "corruptly" mens rea is unconstitutionally vague. *Id.* at 10. Third, defendant, despite *Fischer*, contends that § 1512(c)(2) is limited by subsection (c)(1)'s references to "acts of evidence spoliation." ECF No. 66 at 12. None of these arguments have merit.

### a. The Indictment adequately alleges that Homol acted "corruptly."

Though *Fischer* did not authoritatively construe "corruptly" in § 1512(c)(2), Homol relies on that case in arguing that Count One insufficiently alleges that he acted "corruptly" on January 6, 2021. *See* ECF No. 66-1 at 3–10. According to Homol, the indictment does not satisfy a purported "corruptly" definition from *Fischer* because the other counts, which allege—*inter alia*—disorderly conduct, "fail[] to allege a corrupt act." ECF 66-1 at 10.

But the specificity that Homol seeks for Count One's allegations is not required at this stage. An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a

7

defendant of the charge against which he must defend," *Hamling*, 418 U.S. at 117, which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *Verrusio*, 762 F.3d at 13 (quoting *Debrow*, 346 U.S. at 378). And an indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Even if the Indictment were required to go further than "apprise [ ] defendant[] of the essential elements of the offense with which [he is] charged," *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976), defendant's interpretations of "corruptly" and *Fischer* do not justify dismissal of Count One.  Contrary to Homol's suggestion, *Fischer* does not pronounce an authoritative holding on the meaning of "corruptly" in § 1512(c)(2). The panel in *Fischer* produced three opinions. In the portions of the lead opinion (Pan, J.) joined in full by the concurring judge (Walker, J.), *Fischer* relied on § 1512(c)(2)'s text and structure as well as case law interpreting the statute, *see id.* at 335-39, to conclude that Section 1512(c)(2) "encompasses all forms of obstructive conduct, including . . . efforts to stop Congress from certifying the results of the 2020 presidential election." *Id.* at 335.  In a section of the lead opinion that Judge Walker did not join, Judge Pan reasoned that "[t]he requirement of 'corrupt' intent prevents § 1512(c)(2) from sweeping up a great deal of conduct that has nothing to do with obstruction," but refrained from defining "the exact contours of 'corrupt' intent" because "the task of defining 'corruptly'" was not before the Court.  *Id.* at 340 (opinion of Pan, J.).  Judge Walker, believing that defining "corruptly" was necessary to "make sense" of [§ 1512](c)(2)'s act element," wrote a concurring opinion in which he proposed defining the term to mean to "act with an intent to procure an

unlawful benefit either for oneself or for some other person." *Id.* at 352 (Walker, J., concurring) (citation omitted). The dissenting opinion (Katsas, J.) criticized the concurrence's definition of "corruptly" because it "required transplanting" into Section 1512(c)(2) an interpretation "that appears to have been used so far only in tax law," but did not endorse any other definition of the term. *Id.* at 381 (Katsas, J., dissenting).

As explained in both the lead and dissenting opinions in *Fischer*, the definition of "corruptly" was not squarely presented in that case and therefore was not resolved. *See id.* at 340–41 (opinion of Pan, J.) ("expressing [no] preference for any particular definition of 'corruptly'" because "the allegations against appellees appear to be sufficient to meet any proposed definition of 'corrupt' intent"); *id.* at 341 (noting that the dissent also "declines to settle on a precise meaning of 'corruptly' at this time" and thus "share[s] much common ground" with the lead opinion "on the issue of *mens rea*"); *id.* at 379-81 (Katsas, J., dissenting) (surveying possible definitions of "corruptly" but declining to adopt any particular one). Although the concurrence would have determined that "corruptly" means "a criminal intent to procure an unlawful benefit," *id.* at 352 (Walker, J., concurring), the resolution of that *mens rea* issue was not necessary to the court's holding concerning the *actus reus* of the offense—which Judge Walker joined by concurring in all but a section and a footnote in the lead opinion and concurring in the judgment— and his views on the meaning of "corruptly" were not adopted by the other judges on the panel.

Reading *Fischer* to have left unresolved the definition of "corruptly" in § 1512(c)(2) is consistent with how the case was litigated. Although the defendant argued below that § 1512(c)(2)'s mens rea requirement was unconstitutionally vague, *see United States v. Miller*, 589 F. Supp. 3d 60, 65 (D.D.C. 2022), the district court did not address that argument and specifically declined to interpret "corruptly" when adjudicating the government's reconsideration

motion, *see United States v. Miller*, 605 F. Supp. 3d 63, 70 n.3 (D.D.C. 2022).  The question

presented in *Fischer* concerned § 1512(c)(2)'s actus reus requirement, *see* Brief for the United

States, *United States v. Fischer*, No. 22-3038, at 2-3 (whether Section 1512(c)(2) covers the

defendants' "alleged conduct"), and the government's opening 68-page brief devoted only three

pages to addressing "corruptly" when discussing limitations on the statute's reach.  *See Fischer*,

64 F.4th at 340 (opinion of Pan, J.) (noting that the parties addressed "corruptly" "only

peripherally" in the briefs).  With respect to defining "corruptly" in Section 1512(c)(2), the Court

in *Fischer* did not have the "benefits of the normal litigation process," *id.*, which in turn risks an

"improvident or ill-advised" ruling on an issue not squarely presented, *United States v. West*, 392

F.3d 450, 459 (D.C. Cir. 2004).

Relatedly, treating the concurrence's "corruptly" definition in *Fischer* as a binding holding

is in tension with the party-presentation principle, under which courts "rely on the parties to frame

issues for decision and assign courts the role of neutral arbiter of matters the parties present."

*Sineneng-Smith v. United States*, 140 S. Ct. 1575, 1579 (2020) (citing *Greenlaw v. United States*,

554 U.S. 237, 243 (2008)).  The concurrence's suggestion, *Fischer*, 64 F.4th at 352 n.1 (Walker,

J. concurring), that the parties adequately presented the interpretation of "corruptly" is mistaken.

The concurrence observed that the defendants had "raised the issue below," *id.*, without

acknowledging that the district court never adjudicated the vagueness challenge or defined

"corruptly."  And although the concurrence relied on "lengthy discussions by several district

judges in similar cases," *id.*, those judges also declined to offer definitive interpretations of

"corruptly" in those rulings.  *See, e.g.*, *United States v. Montgomery*, 578 F. Supp. 3d 54, 84 n.5

(D.D.C. 2021) ("[B]ecause the Court has yet to hear from the parties on the proper jury

instructions, the Court will leave for another day the question whether this formulation [of

corruptly]—or a slightly different formulation—will best guide the jury."). [2] In short, the concurrence's interpretation of "corruptly" did not result from the "crucible of litigation," *Fischer*, 64 F.4th at 340 (opinion of Pan, J.), and thus should not be treated as authoritative.

Homol's additional reference to *Arthur Anderson LLP v. United States*, 544 U.S. 696 (2005), likewise does not support his position.   There, the Court explained the terms "'[c]orrupt' and 'corruptly' are normally associated with wrongful, immoral, depraved, or evil." *Id*. at 705 (citation omitted). The Court did not, as defendant suggests, somehow import the particular facts and prior statutory scheme involved in that case directly into that case's holding. Instead, the Court in *Arthur Anderson LLP* simply limited "corruptly" to "persons conscious of wrongdoing."   *Id.* at 706.

### b.  Section 1512(c)(2)'s mens rea requirement is not unconstitutionally vague.

Despite the clear terms of the statute, defendant also argues that the "corruptly" requirement in § 1512(c)(2) "is so ambiguous that Mr. Homol cannot determine what *mens rea* the indictment alleges.   ECF No. 66-1 at 11. Indeed, Homol claims that the multiple opinions in *Fischer* somehow demonstrate this vagueness. But the "corruptly" requirement is not vague, and Homol's contrary arguments should be rejected—by Homol's logic, all of the "around 50 other references to 'corruptly' in Title 18 of the U.S. Code," *Fischer*, 64 F.4th at 341, should be deemed unconstitutional—an untenable result.

As an initial matter, Homol's vagueness argument is irrelevant at this stage because Count One is properly pled.   Recognizing that the court had not agreed upon a definition of "corruptly,"

---

[2]  Additionally, no district court judge appears to have instructed a jury using the concurrence's "corruptly" interpretation, requiring the jury to find that the defendant to require acted with an intent to procure an unlawful benefit either for oneself or for some other person. *See, e.g.*, SA 203; *United States v. Reffitt*, No. 21-cr-32, ECF No. 119 at 25-26 (D.D.C. Mar. 7, 2022); *United States v. Hale-Cusanelli*, No. 21-cr-37, ECF No. 84 at 24, 27 (D.D.C. May 27, 2022).

Judge Walker in *Fischer* explained that the indictments in that case nonetheless "should be upheld" because "[e]ach contains 'the essential facts constituting the offense charged.'   That's because they allege that the Defendants 'corruptly obstruct[ed], influence[d], and impede[d] an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote."   *Fischer*, 64 F.4th at 361 (Walker, J., concurring) (quoting Fed. R. Crim. P. 7(c)(1)).   So too here: the indictment sufficiently alleges that the Defendants acted corruptly, and the Court should leave the exact definition of that term for another day, when the issue is properly before the Court.  *See United States v. Munchel*, No. 1:21-CR-118-RCL, 2023 WL 2992689, at *5 (D.D.C. Apr. 18, 2023) ("First, the 'corruptly' language in the statute is not undefined, vague, or limited to situations where a defendant personally benefited.   While the lead opinion and concurring opinion in *Fischer* were at odds regarding the precise bounds of the corrupt mens rea, both agreed that . . . an indictment alleging a corrupt mens rea in the same manner as the one in this case survives a motion to dismiss.") (citing *Fischer*, 64 F. 4th 329).

In any event, the term "corruptly" is not unconstitutionally vague. The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amends. V, XIV. An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "'[g]enerally, a legislature need do nothing more than enact and publish the law and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.'" *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982)). To avoid arbitrary enforcement, the law

must not "vest[] virtually complete discretion" in the government "to determine whether the suspect has [violated] the statute." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983). A provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997).

Homol cannot overcome the "strong presumpti[on]" that the use of "corruptly" in § 1512(c)(2) is constitutional. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963). Section 1512(c)(2) does not tie criminal culpability to "wholly subjective" terms such as "annoying" or "indecent" that are bereft of "narrowing context" or "settled legal meanings," *Williams*, 553 U.S. at 306, nor does it require application of a legal standard to an "idealized ordinary case of the crime," *Johnson*, 576 U.S. at 604. Section 1512(c)(2)'s prohibition on "corruptly … obstruct[ing], influenc[ing], or imped[ing]" an "official proceeding" gives rise to "no such indeterminacy." *Williams*, 553 U.S. at 306. Instead, the statute requires that a defendant, acting with consciousness of wrongdoing and intent to obstruct, attempts to or does undermine or interfere with a statutorily defined official proceeding. While "it may be difficult in some cases to determine whether these clear requirements have been met," "'courts and juries every day pass upon knowledge, belief[,] and intent— the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.'" *Id.* (quoting *American Communications Ass'n, CIO v. Douds*, 339 U.S. 382, 411 (1950)).

The statute's use of "corruptly" is clear. As Judge Friedman observed in *Puma*, "[j]udges

in this district have construed 'corruptly' to require 'a showing of "dishonesty" or an 'improper purpose'[;], 'consciousness of wrongdoing'[;] or conduct that is 'independently criminal,' 'inherently malign, and committed with the intent to obstruct an official proceeding.'" *Puma*, 2022 WL 823079, at \*10 (quoting *Montgomery*, 578 F.Supp.3d at 81); *Bozell*, 2022 WL 474144, at \*6; *Caldwell*, 581 F.Supp.3d at \*19; and *Sandlin*, 575 F.Supp.3d at 33 (alterations omitted). Under any of these common-sense constructions, the term "corruptly" "not only clearly identifies the conduct it punishes; it also 'acts to shield those who engage in lawful, innocent conduct – even when done with the intent to obstruct, impede, or influence the official proceeding.'" *Id.* (quoting *Sandlin*, 575 F.Supp.3d at 33). It presents no vagueness concern.

Homol's complaint that *Fischer* resulted in "fractured findings" is mistaken and irrelevant to a constitutional vagueness challenge.   Chief Judge Boasberg recently rejected this same argument, finding that it "mischaracterizes what actually occurred in *Fischer*."   Mem. Op., *United States v. Mock,* 21-cr-444 (JEB), ECF No. 83, at 8 (D.D.C. filed Jun. 6, 2023).   Although the D.C. Circuit did not resolve the meaning of the term "corruptly" in *Fischer*, both judges who joined the lead opinion determined that term is not unconstitutionally vague as used in Section 1512(c).   *See Fischer*, 64 F.4th at 339-42 (Pan, J.) (explaining that, under any formulation, "'corrupt' intent exists at least when an obstructive action is independently unlawful," and that "appellees err in arguing that the term 'corruptly' 'takes on unconstitutional vagueness' in circumstances outside the context of a judicial proceeding"); *id.* at 352 (Walker, J.) (explaining that his interpretation of "corruptly" "avoids vagueness"). And a statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because a reasonable jurist might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). "'Even

trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.'" *Bronstein*, 849 F.3d at 1107 (quoting *Rose v. Locke*, 423 U.S. 48, 50 (1975) (per curiam)).

      **c.   Section 1512(c)(2) is not limited by subsection (c)(1).**

As the D.C. Circuit correctly concluded in *Fischer*, 1512(c)(2)'s plain text unambiguously prohibits any corrupt conduct that intentionally obstructs or impedes an official proceeding. When interpreting a statute, courts look first to the statutory language, "giving the words used their ordinary meaning." *Lawson v. FMR LLC*, 571 U.S. 429, 440 (2014) (internal quotation marks omitted). If the statutory language is plain and unambiguous, this Court's "inquiry begins with the statutory text, and ends there as well." *National Ass'n of Mfrs. v. Department of Defense*, 138 S. Ct. 617, 631 (2018) (internal quotation marks omitted). Here, the meaning of "obstruct[], influence[], or impede[]" is controlled by the ordinary meaning of those words.

Homol concedes, ECF No. 66-1 at 13 n.2, that the D.C. Circuit in *Fischer* held that "[u]nder the most natural reading of the statute, § 1512(c)(2) applies to all forms of corrupt obstruction of an official proceeding, other than the conduct that is already covered by § 1512(c)(1)." *Fischer*, 64 F.4th at 336. Homol only advances his contrary argument "to preserve it in case the D.C. Circuit sitting *en banc* or the Supreme Court overrules *Fischer*." ECF No. 66-1 at 13 n.2. Accordingly, the Court should follow *Fischer* and reject a contrary interpretation of the statute.

**II.   The Remaining Counts in the Indictment Are Not Multiplicitous.**

Homol also argues that Counts 2 through 5 allege the same conduct and violate double jeopardy. *See* ECF 66-1 at 13–14. According to Homol, "the [I]ndictment brings several different counts for the same series of alleged acts." *Id.* at 13. Specifically, Homol claims that the counts are multiplicitous because "the same facts that would satisfy the elements of Count 3 (and

possibly Count 1) would also satisfy the elements of every other Count." *Id.* at 14. But similar charges for which common conduct may meet differing elements are not multiplicitous, and the defendant's contrary arguments are without merit.

None of the counts in the Indictment are multiplicitous because each has at least one element that another does not. A defendant may be convicted of and sentenced under different statutory provisions for multiple offenses arising out of the same single act or course of conduct so long as Congress authorized the imposition of such multiple punishments. *See United States v. McLaughlin*, 164 F.3d 1, 8 (D.C. Cir. 1998) ("If the legislature intends to impose multiple punishment, imposition of such sentences does not violate Double Jeopardy."). "To determine multiplicity vel non, courts generally apply the *Blockburger* test: '[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not,' i.e., whether either is a lesser included offense of the other." *United States v. Mahdi*, 598 F.3d 883, 888 (D.C. Cir. 2010) (quoting *United States v. Weathers*, 186 F.3d 948, 951 (D.C. Cir. 1999), and *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

If the two offenses each require proof of a fact the other does not, then the charges are not multiplicitous.[3] *Id.* at 890. The *Blockburger* "test focuses on the statutory elements of the offense,

---

[3] On the other hand, if two offenses fail the *Blockburger* test—because one is a lesser-included offense of the other—that is not the end of the inquiry.  In that scenario, the "*Blockburger* test . . . provides only a canon of construction, not a 'conclusive presumption of law,' *id.* at 888 (quoting *Garrett v. United States*, 471 U.S. 773, 779 (1985)), because there "'is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and *punishing also the completed transaction.*'"  *Id.* (quoting *Garrett*, 471 U.S. at 779) (emphasis in original).   Here, the offenses clearly each require proof of a fact the others do not, so it is not necessary to conduct this further analysis.

not on the proof offered in a given case." *United States v. McLaughlin*, 164 F.3d 1, 8 (D.C. Cir. 1998).   Thus, it is irrelevant whether there is significant overlap in the factual proof of each count at trial, or even whether two counts "are based upon the exact same set of facts and circumstances," as long as each count's elements require proof of a fact that the others do not. *United States v. Manafort*, 313 F. Supp. 3d 311, 314 (D.D.C. 2018); *see id.* ("[T]he test for multiplicity is not whether two counts are based on the same set of facts; rather, it is whether the statutory elements of the two offenses are the same.").

Here, the defendant's multiplicity arguments fail because each of the offenses charged in the indictment "requires proof of a fact which the other does not."   *Blockburger*, 284 U.S. at 304. Thus, the Indictment satisfies *Blockburger*.

Homol is charged with—

**Count 1**:   Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and (2).

The elements of the crime are:

- The defendant attempted to or did obstruct or impede an official proceeding;
- The defendant intended to obstruct or impede the official proceeding;
- The defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and
- The defendant acted corruptly.

**Count 2**:   Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1).

The elements of the crime are:

- The defendant entered or remained in a restricted building or grounds without lawful authority to do so; and
- The defendant did so knowingly.

**Count 3**:   Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2).

The elements of the crime are:

- The defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds;
- The defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions; and
- The defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

**Count 4**:   Disorderly and Disruptive Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D).

The elements of the crime are:

- The defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings;
- The defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress; and
- The defendant acted willfully and knowingly.

**Count 5**:   Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

The elements of the crime are:

- The defendant paraded, demonstrated, or picketed any of the United States Capitol Buildings; and
- The defendant acted willfully and knowingly.

Based on the foregoing elements, none of the counts in the Indictment are multiplicitous because each requires proof of a fact that the other does not.

For example, Count One requires proof that Homol acted corruptly.   Counts Two through Five do not require proof of this fact.   Count Two requires proof that Homol entered or remained in a restricted building or grounds "without lawful authority." Counts One and Three through Five do not require proof of that fact.

Count Three requires proof that Homol "engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds" (element one of Count

Three), and also that the conduct "in fact impeded . . . the orderly conduct of Government business or official functions."   Counts One, Two, Four, and Five do not require proof of these facts.

Count Four, meanwhile, requires proof that Homol engaged in "disorderly or disruptive conduct," which Counts One through Three and Five do not require.   Although Count Three does include the terms "disorderly or disruptive conduct," Count Three contains the terms "or in proximity to, any restricted building or grounds," which Count Four does not include. As noted above, Count Three also requires proof that Adams's conduct "in fact impede[d] or disrupt[ed] the orderly conduct of government business or official functions," which Counts One, Two, Four and Five do not.

Finally, Count Five requires that Homol "parade[d], demonstrate[d], or picket[ed] in any of the Capitol Buildings" (element one of Count Five). Counts One through Four do not require this fact.

Ultimately, Homol misunderstands that the *Blockburger* multiplicity analysis refers to the elements of the offenses, not whether a single act could violate multiple statutes. The very premise of *Blockburger* and its progeny is that the "same act or transaction"—here, Homol's presence and obstruction at the Capitol and on its Grounds—could form the basis for multiple criminal charges so long as each count requires proof of a fact that the others do not. *Mahdi*, 598 F.3d at 888. That the various counts relate to the defendant's presence at the Capitol, and his conduct therein, is unsurprising and ordinary. Ultimately, none of the counts in the Indictment are multiplicitous, and Homol's motion to dismiss on this ground should be rejected.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion to dismiss should be denied.

Respectfully submitted,

Matthew M. Graves
United States Attorney
D.C. Bar No. 481052


By:        */s/ Elizabeth N. Eriksen*
ELIZABETH N. ERIKSEN
VA Bar no. 72399
Trial Attorney, Detailee
U.S. Dept. of Justice, Criminal Division
Detailed to the USAO-DC
601 D Street NW
Washington, DC 20530
(202) 616-4385
Elizabeth. Eriksen@usdoj.gov


*/s/ Nathaniel K. Whitesel*
NATHANIEL K. WHITESEL
Assistant United States Attorney
DC Bar No. 1601102
601 D Street NW
Washington, DC 20530
nathaniel.whitesel@usdoj.gov
(202) 252-7759