UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 23-cr-50 (JMC) |
| : | |
| DILLON HOMOL, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S TRIAL BRIEF**

The United States respectfully submits this brief in advance of the September 25, 2023 trial scheduled before this Court in this case.

**I.   Outstanding Motions**

The motions that have not been ruled on by this Court are:

1. Defendant Dillon Homol's Motion to Dismiss the Indictment, ECF No. 66; and

2. Defendant's Motion to Require the Government to Comply with Its *Brady* Obligations, ECF No. 68

Responsive briefing by the parties is docketed at ECF Nos. 69–72.  The Court previously granted the government's two unopposed motions in *limine*.  *See* Minute Orders (Aug. 8, 2023).

**II.   Request for Opening Statement**

The government respectfully requests a brief opening statement.

**III.   Statement of the Case**

Homol's role in the January 6, 2021, attack on the U.S. Capitol is described in the statement of facts supporting the criminal complaint. *See* ECF No. 1. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol at approximately 1:00 p.m. to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken

place on November 3, 2020. Temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were attempting to keep the crowd that had gathered outside away from the Capitol building and the proceedings underway inside.

Shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts. Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

On or about December 30, 2020, Homol was invited to and joined a Facebook group chat titled "DC Rally" with multiple other participants who planned to protest at the U.S. Capitol on January 6, 2021. Participants planned to meet on the morning of January 6 at the Botanic Garden, in the immediate vicinity of the U.S. Capitol building. Participants circulated a "security SOP" [i.e., standard operating procedure] in the event "things go sideways," and discussed bringing military-style equipment including smoke grenades, "gloves with hard/rigid knuckles," helmets, respirators, handheld radios, and first aid equipment. Participants also shared Facebook posts, including one post that stated, "Congress cannot certify this fraudulent Electoral College." On January 3, 2021, one of the other participants in the above-referenced "DC Rally" Facebook group chat, Homol's brother, sent a text message directly to Homol, stating that a "schedule 40 pvc" pipe "[c]an be used as a weapon." Homol responded, "May just have to hit a ace hardware on the way to dc for the pvc cheaper idea."

On January 5, 2021, Homol traveled from West Virginia, where he was on a snowboarding vacation, to North Carolina,[1] where he met up with his brother so they could travel to Washington, D.C. together. That evening, Homol circulated a message to the "DC Rally" Facebook group chat stating, "The Americans are coming together under the greatest presidents request!" The following morning, January 6, 2021, Homol and his brother attended the "Stop the Steal" rally, standing near the Washington Monument. Homol then walked toward the U.S. Capitol building alongside other rioters. Homol was carrying a long white section of PVC pipe serving as an improvised flagpole with a large red MAGA flag attached. Homol was also wearing a protective vest under his clothing.

While en route to the Capitol building, Homol livestreamed himself via Facebook Live. He broadcast statements including:

    a. "It's the Capitol building, they are counting the electorals in there right now and we stormed it. Look at them Trump flags up top."

    b. "They can't stop us all, come on we are going into the Capitol, can't stop us all."

    c. "American people are sick and tired of it, we're tired of it, the communist cops of Washington DC, we're storming the Capitol building. We're storming the Capitol, this is our country."

In addition, Homol broadcast via Facebook Live from the plaza outside the west side of the Capitol building. In the video clip, Homol was among a crowd of rioters facing a group of Metropolitan Police Department ("MPD") officers guarding the Capitol. Homol chanted, "USA, USA," along with other rioters.

At approximately 2:28 p.m., around approximately the same time the House and Senate Chambers were evacuated, Homol rushed past the line of MPD and USCP officers on the plaza

---

[1] Homol lives in Cocoa Beach, Florida.

3

outside the west side of the Capitol. Multiple officers were physically struggling with rioters and visibly attempting to hold back the increasingly violent crowd. Homol waved his PVC pipe "flagpole" and MAGA flag above his head as he rushed past the officers. One officer had to seize Homol and push him back to the other side of the police line. Homol remained at the front of the crowd as rioters eventually broke through the police line and surged towards and into the Capitol building.

At approximately 2:44 p.m., Homol entered the Capitol building through the Upper West Terrace Doors. Homol continued to broadcast via Facebook Live from inside the Capitol. In one video clip, Homol was among a crowd of rioters, facing a line of police officers wearing riot gear with helmets and lowered face shields, who are blocking off one corridor. Homol's voice is heard stating, "Come on people."

Homol then moved into the Rotunda of the Capitol. At approximately 3:13 p.m., MPD and U.S. Capitol Police ("USCP") officers were attempting to clear the Rotunda. Homol was seated on a bench along the Rotunda wall and refused to leave. An officer grasped the straps of Homol's backpack to physically lift him off the bench and push him toward the exit. Another officer attempted to take away Homol's PVC pipe "flagpole." Homol refused to let go and engaged in a brief tug-of-war with the officer before having the PVC pipe pulled out of his hands.

At approximately 3:36 p.m., officers pushed Homol out the east Rotunda doors; he was among the last of the rioters to exit out of that location. Homol remained just outside as officers blocked the way with a riot shield. At approximately 3:42 p.m., Homol was standing among a group of rioters who attempted to push their way back inside the east Rotunda doors, and officers sprayed the rioters, including Homol, with chemical irritant spray.

Homol communicated extensively with others regarding his participation in the Capitol Riot. For example, in the evening of January 6, 2021, Homol texted to an associate: "Doing great bro it was absolutely legendary. I was stunned but not hurt / Dude so insane I was gassed like a dozen times, peppers sprayed / Shot with them rubber bullets / I had a vest on tho." In addition, later that evening, Homol received a text message from his brother that read, "Make politicians fear We The People again." On January 8, 2021, Homol responded, "I heard in the crowd. This was a warning next time it won't be so nice."

The government intends to prove the above facts with video, photographic, and documentary evidence, as well as the testimony of law enforcement officers.

Based on discussions with defense counsel, the government believes that the basic facts of the case are not substantially in dispute. The parties' most significant disputes arise with respect to the defendant's intent and the application of the law to this set of facts.

## IV.  Charges, Elements, and Definitions

### A. 18 U.S.C. § 1512(c)(2), 2 – OBSTRUCTION OF AN OFFICIAL PROCEEDING[2] AND AIDING AND ABETTING

Count One of the Indictment charges the defendant with corruptly obstructing an official proceeding.

<u>Elements</u>

In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant attempted to or did obstruct or impede an official proceeding.

---

[2] 18 U.S.C. § 1512(c)(2). For other January 6 trials that have used similar instructions to these, see, *e.g.*, *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 28); *United States v. Fellows*, 21-cr-83 (TNM) (ECF No. 140 at 23-27); *United States v. Stedman*, 21-cr-383 (BAH) (ECF No. 69 at 5-8); *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 8); *United States v. Carpenter*, 21-cr-305-JEB (ECF No. 97 at 10); *United States v. Robertson*, 21-cr-34 (CRC) (ECF No. 86 at

5

Second, the defendant intended to obstruct or impede the official proceeding.

Third, the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding.

Fourth, the defendant acted corruptly.

Definitions

Congress's Joint Session to certify the Electoral College vote on January 6, 2021, was an "official proceeding" as that term is used in this count.[3] The official proceeding need not be pending or about to be instituted at the time of the offense. If the official proceeding was not pending or about to be instituted, the government must prove beyond a reasonable doubt that the official proceeding was reasonably foreseeable to the defendant.[4]

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant acted knowingly, the factfinder may consider all of the evidence, including what the

---

11-12); *United States v. Reffitt*, 21-cr-32 (DLF) (ECF No. 119 at 25); *United States v. Williams*, 21-cr-377 (BAH) (ECF No. 112 at 7); *United States v. Hale-Cusanelli*, 21-cr-37 (TNM) (ECF No. 84 at 24); and *United States v. Bledsoe*, 21-cr-204 (BAH) (ECF No. 215 at 7).

[3] *United States v. Fischer*, 64 F.4th 329, 342 (D.C. Cir. 2023) (holding "that congressional certification of the Electoral College count is an 'official proceeding'" for purposes of § 1512(c)(2)). *See also* 18 U.S.C. § 1515(a)(1)(B) (defining "official proceeding" to include "a proceeding before the Congress").

[4] 18 U.S.C. § 1512(f)(1) ("For the purposes of this section—(1) an official proceeding need not be pending or about to be instituted at the time of the offense"). For the nexus requirement (that the official proceeding need be reasonably foreseeable), see *United States v. Sandlin*, 575 F. Supp. 3d 16, 32 (D.D.C. 2021); *United States v. Aguilar*, 515 U.S. 593, 599-600 (1995). For other January 6 trials that have used a similar instruction, see*, e.g.*, *United States v. Reffitt*, 21-cr-32 (DLF) (ECF No. 119 at 25-26), *United States v. Robertson*, 21-cr-34 (CRC) (ECF No. 86 at 12), *United States v. Thompson*, 21-cr-161 (RBW) (ECF No. 832 at 26), *United States v. Williams*, 21-cr-377 (BAH) (ECF No. 112 at 7); and *United States v. Thomas*, 21-cr-552 (DLF) (ECF No. 150 at 23).

defendant did, said, or perceived.[5]

To act "corruptly," the defendant must use independently unlawful means or act with an unlawful purpose, or both. The defendant must also act with "consciousness of wrongdoing." "Consciousness of wrongdoing" means with an understanding or awareness that what the person is doing is wrong or unlawful.

Not all attempts to obstruct or impede an official proceeding involve acting corruptly. For example, a witness in a court proceeding may refuse to testify by invoking his or her constitutional privilege against self-incrimination, thereby obstructing or impeding the proceeding, but that person does not act corruptly. In contrast, an individual who obstructs or impedes a court proceeding by bribing a witness to refuse to testify in that proceeding, or by engaging in other independently unlawful conduct, does act corruptly.[6] Often, acting corruptly involves acting with

---

[5] *See* The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit §§ 1512 & 1515(a)(1); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005); *United States v. Carpenter*, 21-cr-305 (JEB) (ECF No. 97 at 11) (including instruction that the evidence to be considered includes "what [the defendant] did, said, or perceived"); *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 9) (same); *United States v. Fellows*, 21-cr-83 (TNM) (ECF No. 140 at 26) (same); *United States v. Gunby*, 21-cr-626 (PLF) (ECF No. 57 at 7 (holding, in a January 6 case charging offenses under 18 U.S.C. § 1752 and 40 U.S.C. § 5104, that "what [the defendant] witnessed is directly relevant to his knowledge and intent") (citing *United States v. Griffith*, 21-cr-244, 2023 WL 2043223, at *3 (D.D.C. Feb. 16, 2023) and *United States v. Rhine*, 21-cr-687, 2023 WL 2072450, at *7 (D.D.C. Feb. 17, 2023)).

[6] The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit; *Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005); *United States v. Fischer*, 64 F.4th 329, 340 (D.C. Cir. 2023) (opinion of Pan, J.); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013); *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013); *United States v. North*, 910 F.2d 843, 883 (D.C. Cir. 1990), *withdrawn and superseded in part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990); *United States v. Sandlin*, 575 F. Supp. 3d 16, 32 (D.D.C. 2021); *United States v. Caldwell*, 581 F. Supp. 3d 1, 19-20 (D.D.C. 2021); *United States v. Mostofsky*, 579 F. Supp. 3d 9, 26 (D.D.C. 2021); *United States v. Montgomery*, 578 F. Supp. 3d 54, 82 (D.D.C. 2021); *United States v. Lonich*, 23 F.4th 881, 902-03 (9th Cir. 2022). For other January 6 trials that have used similar instructions, see*, e.g.*, *United States v. Williams*, 21-cr-377 (BAH) (ECF No. 112 at 7), and *United States v. Reffitt*, 21-cr-32 (DLF) (ECF No. 119 at 25-29); *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 10).

the intent to secure an unlawful advantage or benefit either for oneself or for another person.[7]

While the defendant must act with intent to obstruct the official proceeding, this need not be his sole purpose. A defendant's unlawful intent to obstruct an official proceeding is not negated by the simultaneous presence of another purpose for his conduct.[8]

Attempt

In Count One, the defendant is also charged with attempt to commit the crime of obstruction of an official proceeding. An attempt to commit obstruction of an official proceeding is a crime even if the defendant did not actually complete the crime.

In order to find the defendant guilty of attempt to commit obstruction of an official proceeding, the Court must find that the government proved beyond a reasonable doubt each of the following elements:

> First, that the defendant intended to commit the crime of obstruction of an official proceeding, as that offense is defined above.

---

[7] This last line, which incorporates aspects of the lead and concurring opinions in *United States v. Fischer*, 64 F.4th 329, 340 (D.C. Cir. 2023) (opinion of Pan, J.); *id.* at 352 (Walker, J., concurring), was provided in *United States v. Nordean, et al*, 21-cr-175 (TJK) (ECF No. 767 at 31-32), *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 10), *United States v. Thomas*, 21-cr-552 (DLF) (ECF No. 150 at 24), *United States v. Fellows*, 21-cr-83 (TNM) (ECF No. 140 at 27), and *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 28).
In denying the defendant's request for a new trial following the D.C. Circuit's opinion in *Fischer*, *United States v. Sheppard* held that the concurring opinion in *Fischer* did not create any binding precedent or change in the law that affects the definition of the word "corruptly." No. 21-203 (JDB) (ECF No. 105 at 20). The jury in *Sheppard* was given a similar instruction to the one set forth here. *Id.* at 2.

In *United States v. Harris*, 21-cr-189 (CJN), Judge Nichols rejected the defendant's argument that "corruptly" requires proof of a dishonest act. *Id.*, Transcript of Closing Arguments and Bench Verdict, Jun. 14, 2023, at 6).

[8] *United States v. Carpenter*, 21-cr-305 (JEB) (ECF No. 97 at 11); *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 10); *United States v. Fellows*, 21-cr-83 (TNM) (ECF No. 140 at 27); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 29).

Second, that the defendant took a substantial step toward committing obstruction of an official proceeding, which strongly corroborates or confirms that the defendant intended to commit that crime.

With respect to the first element of attempt, the defendant cannot be found guilty of attempt to commit obstruction of an official proceeding merely because the defendant thought about it. The Court must find that the evidence proved beyond a reasonable doubt that the defendant's mental state passed beyond the stage of thinking about the crime to actually intending to commit it.

With respect to the substantial step element, the defendant cannot be found guilty of attempt to commit obstruction of an official proceeding merely because the defendant made some plans to or some preparation for committing that crime. Instead, the Court must find that the defendant took some firm, clear, undeniable action to accomplish his intent to commit obstruction of an official proceeding. However, the substantial step element does not require the government to prove that the defendant did everything except the last act necessary to complete the crime.

<u>Aiding and Abetting</u>

In this case, the government further alleges that the defendant committed obstruction of an official proceeding, as charged in Count One, by aiding and abetting others in committing this offense. This is not a separate offense but merely another way in which the government alleges that the defendant committed this offense in Count One.

A person may be guilty of an offense if he aided and abetted another person in committing the offense. A person who has aided and abetted another person in committing an offense is often called an accomplice. The person whom the accomplice aids and abets is known as the principal. It is not necessary that all the people who committed the crime be caught or identified. It is

sufficient to find beyond a reasonable doubt that the crime was committed by someone and that the defendant knowingly and intentionally aided and abetted that person in committing the crime.

In order to find the defendant guilty of obstruction of an official proceeding because the defendant aided and abetted others in committing this offense, the Court must find that the government proved beyond a reasonable doubt the following elements:

> First, that others committed obstruction of an official proceeding by committing each of the elements of the offense charged, as I have explained above.

> Second, that the defendant knew that obstruction of an official proceeding was going to be committed or was being committed by others.

> Third, that the defendant performed an act or acts in furtherance of the offense.

> Fourth, that the defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceeding.

> Fifth, that the defendant did that act or acts with the intent that others commit the offense of obstruction of an official proceeding.

To show that the defendant performed an act or acts in furtherance of the offense charged, the government must prove some affirmative participation by the defendant which at least encouraged others to commit the offense. That is, the Court must find that the defendant's act or acts did, in some way, aid, assist, facilitate, or encourage others to commit the offense. The defendant's act or acts need not further aid, assist, facilitate, or encourage every part or phase of the offense charged; it is enough if the defendant's act or acts further aided, assisted, facilitated, or encouraged only one or some parts or phases of the offense. Also, the defendant's acts need not themselves be against the law.

In deciding whether the defendant had the required knowledge and intent to satisfy the fourth requirement for aiding and abetting, the factfinder may consider both direct and circumstantial evidence, including the defendant's words and actions and other facts and circumstances.  However, evidence that the defendant merely associated with persons involved in a criminal venture or was merely present or was merely a knowing spectator during the commission of the offense is not enough for the Court to find the defendant guilty as an aider and abettor.  If the evidence shows that the defendant knew that the offense was being committed or was about to be committed, but does not also prove beyond a reasonable doubt that it was the defendant's intent and purpose to aid, assist, encourage, facilitate, or otherwise associate the defendant with the offense, the Court may not find the defendant guilty of obstruction of an official proceeding as an aider and abettor.  The government must prove beyond a reasonable doubt that the defendant in some way participated in the offense committed by others as something the defendant wished to bring about and to make succeed.

A defendant may be found guilty of the offense charged in Count One if the defendant obstructed an official proceeding, attempted to obstruct of an official proceeding, or aided and abetted obstruction of an official proceeding.  If the Court finds beyond a reasonable doubt that the defendant committed the offense of obstruction of an official proceeding in any one of these three ways, the Court should find the defendant guilty of Count One and need not consider whether the defendant committed the offense in the other two ways.

### B. 18 U.S.C. 1752(a)(1) – ENTERING OR REMAINING IN A RESTRICTED BUILDING OR GROUNDS[9]

Count Two of the Indictment charges the defendant with entering or remaining in a restricted building or grounds.

Elements

In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

> First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

Second, the defendant did so knowingly.

Definitions

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

The term "knowingly" has the same meaning described in the instructions for Count One.

---

[9] 18 U.S.C. §§ 1752, 3056; *United States v. Jabr*, 4 F.4th 97, 101 (D.C. Cir. 2021). For January 6 cases using similar instructions, see *United States v. Eicher*, 22-cr-38 (BAH) (ECF No. 82 at 6); *United States v. Lesperance, et al.*, 21-cr-575 (JDB) (ECF No. 96 at 26); *United States v. Chwiesiuk, et al.*, 21-cr-536 (ACR) (ECF No. 103 at 8-9); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 30).

### C. 18 U.S.C. 1752(a)(2) – DISORDERLY OR DISRUPTIVE CONDUCT IN A RESTRICTED BUILDING OR GROUNDS

Count Three of the Indictment charges the defendant with entering or remaining in a restricted building or grounds.

<u>Elements</u>

In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

<u>Definitions</u>

"Disorderly conduct" is conduct that tends to disturb the public peace or undermine public safety.[10] Disorderly conduct includes when a person uses words likely to produce violence on the part of others or is unreasonably loud and disruptive under the circumstances.[11]

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.[12]

The terms "restricted building or grounds" and "knowingly" have the same meanings described in the instructions for Counts One and Two.

**D.  40 U.S.C. 5104(e)(2)(D) – DISORDERLY CONDUCT IN A CAPITOL BUILDING[13]**

Count Four of the Indictment charges the defendant with disorderly and disruptive conduct in a Capitol Building.

Elements

In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

>First, the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds.

>Second, the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

>Third, the defendant acted willfully and knowingly.

Definitions

The term "Capitol Buildings" includes the United States Capitol located at First Street, Southeast, in Washington, D.C. The "Capitol Grounds" are defined by the United States Code, which refers to a 1946 map on file in the Office of the Surveyor of the District of Columbia. The boundaries of the Capitol Grounds include all additions added by law after that map was recorded. The Capitol Grounds includes the portion of Pennsylvania Avenue Northwest from the west curb of First Street Northwest to the curb of Third Street Northwest.

"Disorderly conduct" and "disruptive conduct" have the same meaning described in the instructions for Count Three. For purposes of this offense, "the orderly conduct of a session of

---

[13] *United States v. Barnett*, 21-cr-38 (CRC) (ECF No. 158 at 22); *United States v. Jenkins*, 21-cr-245 (APM) (ECF No. 78 at 31); *United States v. Jensen*, 21-cr-6 (TJK) (ECF No. 97 at 40); *United States v. Williams*, 21-cr-618 (ABJ) (ECF 122 at 40); *United States v. Eicher*, 22-cr-38 (BAH) (ECF No. 82 at 6); *United States v. Lesperance, et al.*, 21-cr-575 (JDB) (ECF No. 96 at 28); *United States v. Chwiesiuk, et al.*, 21-cr-536 (ACR) (ECF No. 103 at 10-11).

Congress or either House of Congress" includes the actions of Congress' Joint Session to certify the Electoral College vote.[14]

The term "knowingly" has the same meaning described in the instructions for Count One.

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law. "Willfully" does not, however, require proof that the defendant be aware of the specific law or rule that his conduct may be violating.[15]

### E. 40 U.S.C. 5104(e)(2)(D) – PARADING, DEMONSTRATING, OR PICKETING IN A CAPITOL BUILDING[16]

Count Five of the Indictment[17] charges the defendant with parading, demonstrating, or picketing in a Capitol Building.

Elements

In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

> First, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.
>
> Second, the defendant acted willfully and knowingly.

---

[14] *See United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 17).

[15] *See United States v. Bryan*, 524 U.S. 184, 190 (1998).

[16] *United States v. Barnett*, 21-cr-38 (CRC) (ECF No. 158 at 23); *United States v. Jensen*, 21-cr-6 (TJK) (ECF No. 97 at 42); *United States v. Williams*, 21-cr-618 (ABJ) (ECF 122 at 40); *United States v. Eicher*, 22-cr-38 (BAH) (ECF No. 82 at 7); *United States v. Lesperance, et al.*, 21-cr-575 (JDB) (ECF No. 96 at 29); *United States v. Chwiesiuk, et al.*, 21-cr-536 (ACR) (ECF No. 103 at 11).

[17] The defendant has filed notice of his intent to plead guilty to Count Five. ECF No. 75.

Definitions

The terms "parade" and "picket" have their ordinary meanings. The term "demonstrate" refers to conduct that would disrupt the orderly business of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.[18]

The term "Capitol Buildings" has the same meaning described in the instructions for Count Four. The terms "knowingly" and "willfully" have the same meaning described in the instructions for Counts One and Four.

## V.     Stipulations

The parties filed their joint proposed stipulations under a separate filing, ECF No. 78. In summary, the parties have agreed stipulations on the following topics:

1. the initial entry into the U.S. Capitol Building on January 6, 2021;

2. the January 6, 2021 speech of Former President Donald J. Trump;

3. the walking distance from the Ellipse to the Capitol;

4. the U.S. Capitol Building and Grounds;

5. Dillon Homol's presence in and around the U.S. Capitol Building;

6. Open-Source Media;

---

[18] *United States v. Barnett*, 21-cr-38 (CRC) (ECF No. 158 at 23); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 44). *See also Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000).

7. a Congressional Montage Video;

8. Metropolitan Police Department body worn camera;

9. United States Capitol Police closed circuit video monitoring;

10. the certification of the Electoral College vote;

11. Facebook records; and

12. the defendant's cell phone.

## VI. Anticipated Witnesses

The government currently intends to call the following witnesses in either its case-in-chief or in rebuttal to the defendant's evidence.

**United States Capitol Police Inspector Monique Moore** will provide overview testimony regarding the riot that took place on January 6, 2021.

**Metropolitan Police Department Sergeant Anthony Alioto** will testify about his participation in the conflicts between law enforcement and rioters on the West Plaza and in the Rotunda.

**Federal Bureau of Investigation Special Agent Jacob Hamilton** will testify regarding his investigation of the defendant. Agent Hamilton will also walk the Court through the video and photographic exhibits concerning the defendant's actions at the Capitol during and around the time of the riot.

## VII. Updated Government Exhibit List

The Government's updated exhibit list is included in this filing as Attachment 1.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By: */s/ Elizabeth N. Eriksen*
ELIZABETH N. ERIKSEN
VA Bar no. 72399
Trial Attorney, Detailee
U.S. Dept. of Justice, Criminal Division
Detailed to the USAO-DC
601 D Street NW
Washington, DC 20530
Elizabeth.Eriksen@usdoj.gov
(202) 616-4385

*/s/ Nathaniel K. Whitesel*
NATHANIEL K. WHITESEL
Assistant United States Attorney
DC Bar No. 1601102
601 D Street NW
Washington, DC 20530
nathaniel.whitesel@usdoj.gov
(202) 252-7759