UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 23-cr-50 (JMC) |
| | : | |
| **DILLON HOMOL,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE THE TRIAL AND REQUEST FOR PROFFER**

Defendant Dillon Homol ("Homol"), who is charged in connection with events at the U.S. Capitol on January 6, 2021, and who is scheduled to begin a bench trial before the Court tomorrow, September 25, 2023, has just today moved the Court to continue the trial so that a defense witness to whom Homol issued a subpoena nearly two months ago, his brother David Homol ("David"), can evaluate whether he will waive his Fifth Amendment right and testify at trial. ECF 82-1, at 2 ("Motion"). For the following reasons, this Court should deny his motion, trial should proceed tomorrow morning as scheduled, and the Court should require Homol to proffer how the witness's testimony is relevant and admissible at trial.

## I. Introduction

Video footage and text messages between the brothers demonstrate that Homol attended the January 6, 2021 rally with David. Video, confirmed by Homol's Motion (ECF 82-1 at 3), shows that Homol and David traveled together, though Homol appeared to be walking slightly ahead of David, from the rally to the Capitol grounds. Both Homol and David entered the restricted area, and are seen in video footage on the West Front, where a violent battle with the police was raging, sometime between approximately 2:00-2:28 p.m. All this evidence was produced to Homol in pretrial discovery, and many of the videos and text messages confirming these facts are

among the trial exhibits identified by the United States and provided to Homol on or before September 18, 2023. Although the undersigned only located David in the footage on the West Front (shown below) on Friday, September 22, 2023, video evidence in this case has been produced to Homol over the course of several discovery productions between 2021 and 2023, with the footage in the still shot below having been first produced on January 31, 2023.



*Excerpt from Ex. 505 at 2:17 time stamp*

Homol reports to this Court that he issued a subpoena to David on August 1, 2023. However, Homol's counsel only disclosed to the undersigned that David was a defense witness on Wednesday, September 20, 2023. The next day, September 21, 2023, government counsel called Homol's attorneys to discuss (1) the possibility of David raising a Fifth Amendment privilege at

trial and (2) the relevance and admissibility of David's testimony.  With respect to the first issue, of David's potential Fifth Amendment privilege, defense counsel informed the government that David was represented by separate counsel.  With respect to the second issue, whether David could offer any relevant and admissible testimony, defense counsel declined to provide further details about his expected testimony.  But when the government indicated that it would object to any speculation about Homol's state of mind, or to any hearsay statements of Homol's offered by David, defense counsel indicated that he was not yet sure how he planned to elicit such testimony to avoid valid hearsay objections, but that perhaps David would testify to just David's half of his conversations with Homol.

The next day, Friday, September 22, 2023, while reviewing the video exhibits described above but now with the added knowledge that David would testify at trial—but before any discussions with David's attorney—government counsel and the FBI case agent observed video footage of David with Homol while they were both inside the restricted perimeter of the U.S. Capitol grounds.  Government counsel then called David's attorney and inquired whether David planned to invoke his Fifth Amendment privilege at any point during his testimony.  David's attorney requested a copy of the government's trial brief (ECF 81), which government counsel promptly provided.  David's attorney indicated he would have to further consider how he would advise David with respect to the Fifth Amendment issues.[1]

This afternoon, Sunday, September 24, 2023, government counsel received an email from defendant Homol's attorney indicating they would be seeking a continuance because David's

---

[1] David's counsel inquired whether the government would provide immunity for his testimony. Government counsel declined this request. This decision cannot be disturbed by the Court. *United States v. Lugg*, 892 F.2d 101, 104 (D.C. Cir. 1989) ("'[I]t is not the proper business of the trial judge to inquire into the propriety of the prosecution's refusal to grant use immunity to a prospective witness.'") (citing *United States v. Heldt*, 668 F.2d 1238, 1283 (D.C.Cir.1981).

3

attorney has advised him to assert his Fifth Amendment right and not testify on Homol's behalf. All parties then had a teleconference, and the government subsequently provided the relevant trial exhibits (including time stamps relevant to David's conduct) to counsel for both David and Homol.

## II. No Continuance is Warranted to Address Concerns the Defendant and the Witness Have Known Far Longer than Government Counsel

Both Homol and his brother David, who were together inside the restricted perimeter of the Capitol grounds on January 6, have been aware of the potential criminal exposure David faces since their conduct on January 6, 2021 – almost three years ago.  No continuance, however long or short, will change that fact.  David's counsel has now had several days to discuss David's rights and concerns with his client and with counsel for Homol, so that he can make a knowing and informed decision whether to testify at trial.

## III. Homol's Sixth Amendment Rights are Not Absolute

A defendant has a Sixth Amendment right to present witnesses in his own defense, and to compel their testimony.  But this right bumps up against reasonable limits, including a witness's Fifth Amendment privilege to refuse compelled incrimination.  "The defendant's right to present witnesses in his own defense…does not carry with it the right to immunize the witness from reasonable and appropriate cross-examination." *Lawson v. Murray*, 837 F.2d 653, 655-56 (4th Cir. 1988).  Cross-examination is an indispensable tool in the search for truth. *Id* (citing *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). Accordingly, a witness's Fifth Amendment privilege is not a "positive invitation to mutilate the truth a party offers to tell." *Brown v. United States*, 356 U.S. 148, 156 (1958).  For this reason, although striking a witness's testimony is a drastic remedy, it "may be the only appropriate remedy when refusal to answer the questions of the cross-examiner frustrates the purpose of the process." *Lawson*, 837 F.2d at 655-56 ("Neither a defendant's right

4

of confrontation nor his right to present witnesses in his own defense is so absolute as to require a subversion of even more fundamental principles that animate our adversary system.").

In *United States v. Crews*, a defendant on trial for attempted robbery called a witness—his fiancée—to testify in his defense.  856 F.3d 91, 94-95 (D.C. Cir. 2017).  The witness testified about her direct knowledge of the events on the day of the robbery.  On direct, she claimed that she did not know the defendant's accomplices.  But on cross-examination, the prosecution confronted her with prior inconsistent testimony indicating she did know the accomplices, and the witness refused to answer, citing her 5th Amendment privilege.  The district court instructed the jury to disregard her entire testimony as a result.  *Id.* at 96.  The D.C. Circuit affirmed, finding no plain error even though the scope of the witness's privilege was not fully established at trial.  *Id.* at 101.  Importantly, the court noted that, although the witness's invocation only went to an issue of her credibility, that was not a "collateral" issue.  *Crews* noted, "witness credibility is sometimes the linchpin of an entire defense." *Id.* at 100; *see also United States v. Garcia*, 778 F. App'x 779, 788 (11th Cir. 2019) ("If a witness invokes her right against self-incrimination during cross-examination, 'all or part of that witness's direct testimony may be subject to a motion to strike.' *Fountain v. United States*, 384 F.2d 624, 628 (5th Cir. 1967).").

And, as *Crews* indicates, a witness may not pick and choose which questions to answer and which to refuse.  If the cross-examination is on a "direct" matter, the court should not allow the witness to testify or should strike his testimony; only if the cross-examination goes to a "collateral" matter should the court limit the cross-examination to preclude questions about that issue. *See United States v. Noone*, 913 F.2d 20, 31-32 (1st Cir. 1990); *Bagby v. Kuhlman*, 932 F.2d 131, 125 (2d Cir. 1991) ("To reconcile a defendant's rights under the confrontation clause with a witness' assertion of the fifth amendment privilege, a court must initially consider: (1) whether the matter

5

about which the witness refuses to testify is collateral to his or her direct testimony, and (2) whether the assertion of the privilege precludes inquiry into the details of his or her direct testimony."); *United States v. Wilmore*, 381 F.3d 868, 872-73 (9th Cir. 2004).

Here, David's actions that he took side-by-side with his brother Homol are "direct" matters that must be permitted topics of cross-examination as to any relevant testimony he might offer on direct examination. If David intends to invoke his privilege against self-incrimination in response to the government's questions directly related to Homol's crimes and David's participation with him on January 6, the entirety of his testimony should be stricken.

**IV.    Homol Cannot Require the Government to Immunize a Defense Witness**

In rare situations, it might be possible that the risk of prosecution is so remote, and the need for the defense witness testimony so great, that fairness might require the Court to refuse to strike a witness's testimony after invocation of the privilege. *See United States v. Lugg*, 892 F.2d 101, 104 (D.C. Cir. 1989) (noting that "[s]ome cases have indicated that the government may be compelled to grant a defense witness immunity in 'extraordinary circumstances,[,]'" but citing only instances of prosecutorial misconduct or a distortion of the fact-finding process). For example, "where the government gives immunity to a prosecution witness while declining to grant immunity to a similarly situated defense witness there could be a due process violation[.]" *Carter v. United States*, 684 A.2d 331, 340 (D.C. 1996) (citing *Earl v. United States*, 361 F.2d 531, 534 n.1 (D.C. Cir. 1966)). Thus, the Second Circuit has found that "[d]efense witness immunity is required only upon a showing that '(1) the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the Fifth Amendment; and (2) the witness' testimony will be material, exculpatory and not cumulative and is not obtainable from any other source." *United States v. Rivera*, 971 F.2d 876,

887 (2d Cir.1992) (*quoting United States v. Burns*, 684 F.2d 1066, 1077 (2d Cir.1982). None of these facts are present here: no other witnesses have been immunized; the government has not forced the witness to invoke any privilege; and, as discussed next, there is no basis to believe that David's testimony would be material, exculpatory, not cumulative, or not obtainable from any other source.

**V.      The Court Should Require Homol to Proffer the Relevance and Admissibility of the Witness's Testimony**

In Homol's Motion, he asserts that the defense expects David to testify that he invited Homol to attend the January 6 rally and handled much of the trip's preparations. ECF 82-1, at 3. They attended the rally together and then walked to the Capitol. *Id.* The brothers "stayed together on the Capitol grounds until David lost sight of the Defendant in the growing crowd outside the Capitol." *Id.* Homol then asserts that "David Homol is a key witness for the defense" and "is expected to provide testimony rebutting the government's accusations that Mr. Homol acted 'corruptly' to disrupt or impede an official proceeding. *Id.*

Based on this proffer, it appears that David's expected testimony would be largely irrelevant, duplicative, and inadmissible. First, David's preparations for the trip are likely only marginally relevant to the issues in dispute in this case. Homol has already indicated that he intends to plead guilty to Count Five, charging him with Parading, Demonstrating, and Picketing in the Capitol Building—indicating that his presence at the rally in the morning of January 6 and at the Capitol later that afternoon are not in dispute. ECF 75. Second, David's description of their travels from the rally to the Capitol are likely to be duplicative of the voluminous video evidence showing Homol's path—including the Facebook Livestream videos Homol himself filmed and posted that indicated he was traveling with David. Third, and perhaps most critically, Homol's proffered intent to use David's testimony to describe Homol's mental state is likely to be entirely

7

speculative and inadmissible. Nor can David testify about Homol's out-of-court statements to David, which would be inadmissible hearsay when offered by Homol. USCS Fed Rules Evid R 801(c). In short, Homol's brief proffer set forth in his Motion is insufficient to demonstrate how David's testimony would be admissible and helpful to this Court in determining any fact in dispute in this case. A further proffer should be required before the Court assesses the defense Motion to continue or allows David to testify about potentially inadmissible and improper topics.

### VI.     Conclusion

This trial date was set months ago and was agreeable to all parties. The government's witness will be present and ready for trial to begin tomorrow. The defense had the evidence detailing David's whereabouts for as long as the government has, and no doubt the defendant and his brother have had that information since the afternoon of January 6, 2021. As soon as the government learned that David would be a witness and realized he was with the defendant on the restricted Capitol grounds, the government timely advised all parties involved—precisely to avoid any surprises at trial. There are no facts or law that will change between now and any date in the future that necessitates a continuance here. Accordingly, the Court should deny the defendant's motion to continue the trial date and should require the defendant to proffer how David's testimony would be relevant and admissible at trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:    */s/ Elizabeth N. Eriksen*
ELIZABETH N. ERIKSEN
VA Bar no. 72399
Trial Attorney, Detailee
U.S. Dept. of Justice, Criminal Division

Detailed to the USAO-DC
601 D Street NW
Washington, DC 20530
Elizabeth.Eriksen@usdoj.gov
(202) 616-4385

*/s/ Nathaniel K. Whitesel*
NATHANIEL K. WHITESEL
Assistant United States Attorney
DC Bar No. 1601102
601 D Street NW
Washington, DC 20530
nathaniel.whitesel@usdoj.gov
(202) 252-7759